UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LISA M. BARROW,

                          Plaintiff,

        v.

FORD MOTOR COMPANY,

                      Defendant.

_____

**REPORT**
**and**
**RECOMMENDATION**
------------------------------
**DECISION**
**and**
**ORDER**

**03-CV-621A(F)**

APPEARANCES:        DAVID RODRIGUEZ, ESQ.
                            Attorney for Plaintiff
                            420 Franklin Street
                            Buffalo, New York 14202

                            SUTHERLAND, ASBILL & BRENNAN, LLP
                            Attorneys for Defendant
                            ALLEGRA J. LAWRENCE,
                            LISA C. JERN, and
                            SARAH T. THOMPSON, of Counsel
                            999 Peachtree Street, N.E.
                            Atlanta, Georgia 30309-3996

                            SCHRÖDER, JOSEPH & ASSOCIATES, LLP
                            Attorneys for Defendant
                            GINGER D. SCHRÖDER, and
                            M. ROGAN MORTON, of Counsel
                            766 Ellicott Street
                            Buffalo, New York 14203

## <u>JURISDICTION</u>

This case was referred to the undersigned by Honorable Richard J. Arcara on

September 26, 2003, for all pretrial matters, including report and recommendation on

dispositive motions.  The matter is presently before the court on Defendant's motions to

dismiss (Doc. No. 30), filed on March 25, 2005, and for summary judgment (Doc. No.

35), filed on June 30, 2005.

## BACKGROUND

Plaintiff Lisa M. Barrow ("Plaintiff" or "Barrow") commenced this employment discrimination action on August 14, 2003, alleging her former employer, Defendant Ford Motor Company, Inc. ("Defendant" or "Ford"), denied Plaintiff promotions and training opportunities based on Plaintiff's race, and retaliated against Plaintiff for filing an employment discrimination charge against Defendant with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's employment discrimination and retaliation claims are asserted pursuant to both federal law, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and New York Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYHRL"). Defendant's answer was filed on September 23, 2003 (Doc. No. 4).

On March 25, 2005, Defendant filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 37(b)(2)(C) (Doc. No. 30) ("motion to dismiss"), based on Plaintiff's continued failure to comply with this court's order of March 14, 2005 (Doc. No. 24) ("March 14, 2005 Order), directing Plaintiff to provide Defendant with certain audiotapes. The motion to dismiss is supported by the Affidavit of M. Rogan Morton, Esq. (Doc. No. 28) ("Rogan Affidavit"), and the Memorandum in Support of Motion for Dismissal Pursuant to Rule 37(b)(2)(C) (Doc. No. 29) ("Defendant's Memorandum Supporting Dismissal"). In opposition to the motion to dismiss, Plaintiff, on April 29, 2005, filed the Affirmation of David Rodriguez, Esq. (Doc. No. 30) ("Rodriguez Affirmation"). In further support of the motion to dismiss, Defendant filed on May 13, 2005, a Reply Memorandum (Doc. No. 34) ("Defendant's Reply Supporting Dismissal").

On June 30, 2005, Defendant filed a motion for summary judgment (Doc. No. 35)

2

("summary judgment motion"), supported by a Memorandum of Law (Doc. No. 45)

("Defendant's Memorandum Supporting Summary Judgment"), a Statement of Facts

(Doc. No. 36) ("Defendant's Facts Statement"), and eight volumes of exhibits (Doc.

Nos. 37 - 44), attached to either the Affidavit of Sarah T. Holloway (Defendant's Exh. 1)

("Holloway Affidavit") ("Holloway Affidavit Exh(s). ___"), or to the Affidavit of John

Leonard ("Defendant's Exh. 2) ("Leonard Affidavit") ("Leonard Affidavit Exh(s). ___").  In

opposition to summary judgment, Plaintiff filed on August 26, 2005, a Memorandum of

Law (Doc. No. 48) ("Plaintiff's Memorandum"), and four volumes of exhibits (Doc. Nos.

49 - 52) ("Plaintiff's Exh(s). __").  In further support of summary judgment, Defendant

filed on September 9, 2005, a Reply Memorandum of Law (Doc. No. 53) ("Defendant's

Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendant's motion for summary judgment should be

GRANTED and Defendant's motion to dismiss as a sanction for failure to comply with

discovery should be DISMISSED as moot.  Alternatively, should the District Judge deny

Defendant's motion for summary judgment, Defendant's motion for sanctions pursuant

to Rule 37(b)(2)(C) should be DENIED insofar as Defendant seeks dismissal for failure

to comply with discovery and is GRANTED as to the lesser sanction of imposing any

costs associated with further depositions on Defendant's counsel.

## **FACTS**[1]

Plaintiff commenced working for Ford on September 13, 1999, as a Production

---

[1] Taken from the pleadings and motion papers filed in this action.

Supervisor in the Press Department at Ford's Buffalo Stamping Plant ("the Plant").  It is

undisputed that Barrow holds several academic degrees, including an Associate

Degree in Human Services, from Herkimer County Community College in Herkimer,

New York, an Electronic Technician Diploma from DeVry Institute of Technology in

Columbus, Ohio, a Bachelor of Science Degree in Political Psychology from Capital

University in Columbus, Ohio, a Master of Science Degree in Industrial Technology

from Buffalo State College in Buffalo, New York, and a Doctorate Degree in

Management Organizational Leadership from University of Phoenix On-Line.  Prior to

her employment at Ford, Barrow had worked for six years as a manufacturing

supervisor for General Motors of Canada, a position which entailed such job

responsibilities as, *inter alia*, production control and logistics scheduling, implementing

synchronous flow activities, ergonomics, and inventory control and reduction.

Each salaried position at the Plant is assigned a rank denoting a particular

employee's level of experience.  The rankings, based on lowest to highest seniority, are

Salary Grade 6 ("GSR 6"), Salary Grade 7 ("GSR 7"), Salary Grade 8 ("GSR 8"), and

Leadership Level ("LL") 6, LL 5, LL 4, LL 3, LL 2, and LL 1.[2]  Throughout Barrow's

tenure with Ford, Barrow's Production Supervisor position was compensated at GSR 6.

Salary Grade or GSR employees generally are eligible for promotion to positions

that are one seniority grade level higher than their current positions.  As such, Barrow,

as a GSR 6 employee, would be eligible for promotion to a GSR 7 position, but not to a

---

[2] The rate of compensation for GSR employees increases as the grade level increases.  For example, a GSR 7 position is compensated at a higher rate of pay than a GSR 6 position.  The rate of compensation for Leadership Level ("LL") employees, however, increases as the grade level decreases. For example, an LL 5 position is compensated at a higher rate of pay than an LL 6 position.

GSR 8 position or an LL position.  Promotion decisions are made by management level employees based on information from the Plant Development Committee Five ("PDC V"), comprised of production line managers and facilitated by human resources representatives.  Ford's promotion decisions are based on a particular employee's success in his or her current position, combined with an assessment of performance ratings, supervisory recommendations, experience. reliability, attendance, disciplinary record, educational background, and demonstrated production, supervisory and leadership capabilities, as evidenced by the employee's performance reviews.

Ford employees must generally complete 18 months in their current position before being considered for a promotion or a lateral move.  Lateral moves within the Plant are considered for employees demonstrating sustained performance in their current assignment area.  An employee can increase the opportunity for promotion by accepting an assignment to a lateral position at another Ford plant location, thereby broadening the employee's knowledge and experience.

Performance reviews of Salary Grade employees, like Barrow, are given once a year by the employee's immediate supervisor, and approved by the Area Manager. An employee's overall performance is assessed one of seven ratings, including (1) Outstanding; (2) Excellent Plus; (3) Excellent; (4) Satisfactory Plus; (5) Satisfactory; (6) Satisfactory Minus; and (7) Unsatisfactory.  Only employees whose sustained job performance rating is at least Satisfactory Plus or better are considered for promotion.

Barrow's job performance at Ford was consistently rated Satisfactory.  Barrow's annual performance reviews, however, also identified numerous areas of plant policies in which Barrow's job performance could be improved, including working to improve

quality and reduce downtime through better communication with the skilled trades employees (hourly employees holding non-assembly job positions servicing the assembly line), developing a sense of trust with the employees Barrow supervised, addressing work pace issues with manpower and attention, paying more attention to quality, reducing customer complaints, minimizing scrap materials, improving communications with the plant engineering department, working with others, accepting responsibility, taking direction, improving Barrow's own work attendance, housekeeping, giving team leaders more assignments and following up on such assignments, and using the available tools to improve production costs and delivery.

On August 1, 2000, Barrow accepted a lateral transfer to the Metal Assembly Department at the Plant, where Barrow continued to work as a Production Supervisor. In September 2000, Ford offered Barrow a promotion to a GSR 7 position[3] at another, unidentified Ford location, which Barrow declined to accept.  Barrow maintains that her decision not to accept the promotion was based on the relatively short amount of time in which she was required to make the decision.

Between 1999 and 2002, Mario Ciach, a representative in Ford's PDC V, was assigned as Barrow's mentor to assist with Barrow's career development at Ford.  As Barrow's mentor, Ciach was responsible for learning Barrow's prior work experiences, educational achievements and career goals, and received several good reports regarding Barrow from various Ford employees.  Barrow expressed interest to Ciach in

---

[3] The title of the GSR 7 position is not provided in the record.  The record does not indicate the basis for offering Barrow the GSR 7 position as a promotion, despite the fact that Barrow's job performance had only been rated as "Satisfactory."

working in various programs at Ford, including "Six Sigma," which is a data collection based, problem-solving tool used at the plant, as well as in Ford's Quality, Manufacturing Engineering, and Plant Engineering programs.  Barrow also inquired as to opportunities to work in the Station Process Control Department of the Ford Production Systems ("FPS") program.  Between 1999 and 2003, Ford maintained a program in which salaried employees were rotated through various departments or "gateways" to learn more about other positions at the plant and to increase their chances for promotion.

Particularly, in 2001, Barrow was placed on a performance improvement plan designed to improve Barrow's performance review in the following year.  In meeting with Ciach to discuss Barrow's career path at Ford, Barrow informed Ciach that she was most interested in the Six Sigma program, and her second choice was the FPS program.  In particular, Barrow identified the "synchronist flow card system" in the Plant's Quality Department as the FPS function in which she was interested.  Barrow also expressed interest in working as a field representative troubleshooting quality control issues at other plants, as well as in material controls.  Barrow did not, however, express any interest in the plant engineering or manufacturing engineering departments, although both departments are considered gateways to the some of the positions in which Barrow was interested.  Ciach advised Barrow that working on "green belt" and "black belt" projects[4] was important for getting into the Sigma Six program.  Barrow, however, never worked on any green belt or black belt programs.  Barrow's

---

[4] "Green belt" projects are designed to save Ford money.  It is not clear from the record what "black belt" projects are.

mentor, Ciach, described Barrow as being "defensive," unwilling to accept job coaching, and "didn't work well with teams."  Ciach Deposition Transcript ("Ciach Dep. T."), Plaintiff's Exh. D (Doc. No. 51), at 76.

Barrow often discussed with Ciach her concerns that Ford discriminated against minority employees by failing to promote or provide training to such employees.  Ciach T. at 79, 80, 83.  According to Barrow, Ford maintained a "good old boys" network that resulted in discrimination against Barrow and other minorities.

On March 12, 2002, Barrow placed a call to Ford's harassment hotline to report that two years earlier, an hourly Ford employee had picked Barrow up off the floor and gave her a "bear hug."  On August 16, 2002, Barrow filed an administrative claim with the EEOC ("the EEOC charge"), alleging that between March 2000 and July 2002, Ford had denied Barrow training opportunities and promotions, selecting for such positions white employees who were less qualified and had less experience.  Barrow maintains that after filing the EEOC charge, she was often subjected to discipline for attendance issues for which Barrow had previously been undisciplined, and was "micro managed" and eventually terminated.  Affidavit of Lisa M. Barrow ("Barrow Affidavit"), Attached to Plaintiff's Memorandum (Doc. No. 48), ¶ 33.

On July 18, 2003, at Barrow's request, the EEOC issued its Notice of Right to Sue ("Right to Sue letter"), advising that the EEOC was terminating its processing of the EEOC charge.  Barrow then commenced this action on August 14, 2003.

Barrow's discrimination and retaliation claims are predicated on Ford's denying Barrow several promotions and training opportunities.  In particular, Barrow challenges Ford's selection of: (1) Elizabeth Schmalkuche ("Schmalkuche") for a GSR 7 Six Sigma

position in September 1999; (2) Barbara Cline-Krueger ("Cline-Krueger") for an LL 6
Ford Production Systems Coordinator position on December 1, 1999; (3) Sue Haefner
("Haefner") for an LL 6 Six Sigma Black Belt Candidate position in May 2000; (4) Jill
Pappaj ("Pappaj") for a GSR 8 Six Sigma position in May 2000; (5) Paul Gawronski
("Gawronski") for a GSR 8 Six Sigma Belt Candidate position during the summer of
2001; (6) Lawrence Ricigliano ("Ricigliano") for a GSR 6 Quality Department -
Supervisor position in October 2002; (7) Anthony Casucci ("Casucci") for an LL 6
Superintendent position in April 2003; and (8) John Janeczko ("Janeczko") for an LL 6
Lead Quality Review Engineering position on May 19, 2003.  Barrow also challenges
Ford's decisions with regard to (1) the  assignment of GSR 6 supervisor Michael Sirica
("Sirica") to temporarily supervise assignments during the summers of 2001 and 2003;
(2) LL 6 Synchronous Material Flow positions located in Dearborn, Michigan; and (3) a
Human Resources Generalist position[5] posted in 2002, but never filled.

       While employed by Ford, Barrow was repeatedly disciplined for violating the
Plant's attendance policy, and was placed on the Salaried Attendance Guidelines for
repeated absences and for leaving work early without permission and without notifying
her supervisors.  Barrow's disciplinary record includes warning letters of admonition
issued in 2001 for insubordination and manpower issues after the production lines for
which Barrow was responsible went down on two occasions because Barrow failed to
provide coverage for hourly production employees who were on vacation.  In 2002,
Barrow violated Ford's policy regarding vacation days.  In February 2004, Barrow was

---

[5] The record does not specify the salary grade for the Human Resources Generalist position.

disciplined for leaving the plant without permission, failing to provide medical documentation to support an absence, and failing to follow Ford security's requests to stop at an on-site stop sign.  In April 2004, Barrow was suspended for two weeks without pay for falsifying her timecards.  Barrow was absent 13% of the available workdays in 2003, and 70% of the available workdays in 2004.

Barrow was placed on three medical leaves, including from April 17, 2004 through August 2, 2004, from September 27, 2004 through December 6, 2004, and from February 24, 2005 through May 11, 2005.  On February 7, 2005, when the plant's medical staff requested Barrow provide documentation from her physician to support a medical leave in accordance with Ford's policy, Barrow became combative and verbally abusive.

On February 7, 2005, Ford filed, in connection with the instant ligitation, a motion to compel discovery (Doc. No. 20) ("discovery motion"), seeking to compel Barrow to produce certain audiotapes Barrow had recorded while employed by Ford, and which Barrow had identified as having relied on in preparing her responses to Defendant's first set of interrogatories ("the audiotapes").  Barrow did not respond to the motion; nor did Barrow or counsel, David Rodriguez ("Rodriguez"), appear on March 14, 2005 for oral argument on the discovery motion.  At the conclusion of the March 14, 2005 oral argument, the undersigned entered an order granting Ford's discovery motion, and ordering Barrow to provide Ford, by March 24, 2005, with either the original or complete copies of the audiotapes.  March 14, 2005 Order (Doc. No. 24).  Barrow was also advised that violations of such order may subject Barrow to sanctions, including dismissal of the Complaint pursuant to Fed. R. Civ. P. 37(b)(2)(C).  *Id*.  The court

further awarded Ford the costs incurred in making the discovery motion.  *Id*.

As of March 25, 2005, Barrow had failed to deliver the audiotapes to Ford's

attorneys, in accordance with the March 14, 2005 Order, prompting Ford to file the

instant motion to dismiss.  Barrow maintains that on March 25, 2005, the date the

audiotapes were to be delivered to Ford, Rodriguez contacted Doculegal to make

arrangements for the audiotapes to be copied and delivered to Ford.  Although the

record does not indicate when the copies of the audiotapes were provided to Ford, Ford

does not deny having received them.

On May 11, 2005, Barrow's employment with Ford was terminated based on

repeated acts of insubordination and breach of trust.


### DISCUSSION

**2.      Summary Judgment**

Alternatively, should the District Judge disagree with the court's initial

recommendation that the Complaint be dismissed pursuant to Rule 37(b)(2)(C) to

sanction Plaintiff for failing to comply with discovery, then Defendant's motion for

summary judgment should be granted.

Summary judgment of a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The

court is required to construe the evidence in the light most favorable to the non-moving

party.  *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson*, 477

U.S. at 255).  The party moving for summary judgment bears the burden of establishing

the nonexistence of any genuine issue of material fact and if there is any evidence in

the record based upon any source from which a reasonable inference in the non-

moving party's favor may be drawn, a moving party cannot obtain a summary judgment.

*Celotex*, 477 U.S. at 322; *see Anderson*, *supra*, at 247-48 ("summary judgment will not

lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party").  In assessing a record

to determine whether there is genuine issue of material fact, the court is required to

resolve all ambiguities and draw all factual inferences in favor of the party against

whom summary judgment is sought.  *Rattner*, 930 F.2d at 209.

        "[W]here the nonmoving party will bear the burden of proof at trial on a

dispositive issue, a summary judgment motion may properly be made in reliance solely

on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'

Such a motion, whether or not accompanied by affidavits, will be 'made and supported

as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving

party to go beyond the pleadings and by her own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate 'specific facts showing

that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 323-24 (1986) (quoting Fed.

R. Civ. P. 56).  Thus, "as to issues on which the non-moving party bears the burden of

proof, the moving party may simply point out the absence of evidence to support the

non-moving party's case."  *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164

F.3d 736, 742 (2d Cir. 1998).  Once a party moving for summary judgment has made a

properly supported showing as to the absence of any genuine issue as to all material

facts, the nonmoving party must, to defeat summary judgment, come forward with

evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v.*

*March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Although a summary judgment motion may be made with or without supporting

affidavits, if affidavits are submitted, they "shall be made on personal knowledge, shall

set forth such facts as would be admissible in evidence, and shall show affirmatively

that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P.

56(a).  Rule 56 further provides that

> [w]hen a motion for summary judgment is made and supported as provided in
> this rule, an adverse party may not rest upon the mere allegations or denials of
> the adverse party's pleading, but the adverse party's response, by affidavits or
> as otherwise provided in this rule, must set forth specific facts showing that there
> is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

"However, if the motion for summary judgment is not made and supported as provided

in Rule 56, the Rule does not impose on the party opposing summary judgment an

obligation to come forward with affidavits or other admissible evidence of his own."  *St.*

*Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (reversing granting of summary

judgment in favor of defendant because defendant failed to allege factual basis for

assertions contained in defendant's affidavit such that plaintiff, as the party opposing

summary judgment, was not required to adduce evidence to defeat summary judgment

and the "self-serving" nature of plaintiff's affidavit statements went to the weight of the

statements, rather than to their admissibility).

In the instant case, Ford argues in support of summary judgment that (1) many

of Barrow's allegations concerning Ford's denial of promotions and training

opportunities are time-barred or procedurally barred by Barrow's failure to exhaust

administrative remedies; (2) Ford has demonstrated a legitimate reason for denying

Barrow the subject promotions and training opportunities, including that Barrow was not

the best candidate for such promotions and opportunities; and (3) Barrow has failed to

establish that Ford's proffered explanation for denying Barrow certain promotions and

training opportunities is merely a pretext for race discrimination or retaliation.

Defendant's Memorandum Supporting Summary Judgment at 1.

   In opposition to summary judgment, Barrow does not deny that many of her

claims are barred by either the applicable limitations period or failure to exhaust

administrative remedies; rather, Barrow asserts that circumstantial evidence, including

the fact that Barrow was never disciplined at Ford prior to filing her formal EEOC charge

on August 16, 2002, alleging she was subjected to race-based employment

discrimination between March and July 2002.  Plaintiff's Memorandum at 3.  Barrow

further maintains that she was qualified for all the employment positions in which she

expressed interest, but that white employees were consistently selected to fill the

positions, *id.* at 3-5, and that such discrimination was intended to retaliate against

Barrow for filing the EEOC charge.  *Id*. at 5-6.

   In further support of summary judgment, Ford argues that Barrow's response in

opposition to summary judgment narrows the claims to whether Barrow was denied

promotions based on unlawful retaliation, and does not address many of Ford's other

arguments in support of summary judgment.  Defendant's Reply at 1.  Ford further

contends that Barrow has failed to establish the requisite causal connection between

the filing of the EEOC charge and any alleged adverse employment action, *id.* at 4-5, or that Ford's articulated legitimate nondiscriminatory reasons for denying Barrow the promotions were mere pretext for retaliation. *Id*. at 6-8.

In the instant case, Ford argues in support of summary judgment that some of the alleged incidents of racial discrimination and retaliation on which Barrow bases her claims are time-barred, that Barrow has failed to exhaust administrative remedies as to her retaliation claim, that Barrow is unable to establish a *prima facie* case of employment discrimination or retaliation, and that Barrow cannot establish all the elements for an employment discrimination or retaliation claim.

### A.    Exhaustion of Administrative Remedies

As stated, in support of summary judgment, Ford aruges that insofar as Barrow alleges she was retaliated against for filing her EEOC charge, Barrow has failed to exhaust administrative remedies relative to such claim.[6]  Defendant's Memorandum Supporting Dismissal at 10-11.  Barrow has not responded to this argument.

A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which are "reasonably related" to that alleged in the EEOC charge.  *Butts v. City of New York Dep't of Housing Preservation & Development*, 990 F.2d 1397, 1401 (2d Cir. 1993) (internal citation omitted).  "This exhaustion requirement is an essential element of Title VII's statutory scheme," as Title VII's intended purpose to provide notice and

---

[6] Ford does not deny that Barrow, by filing the EEOC charge, has exhausted administrative remedies with regard to her racial discrimination claims.

encourage settlement of discrimination disputes would be defeated if litigation of a claim not previously presented to and investigated by the EEOC were permitted. *Butts*, 990 F.2d at 1401. *See Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (exhaustion of administrative remedies is a precondition to bringing a Title VII claim in federal court).

Nevertheless, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Shah v. New York State Department of Civil Service*, 168 F.3d 610, 614 (2d Cir. 1999). Further, "a claim 'alleging retaliation by an employer against an employee for filing' a discrimination charge is one type of claim [the Second Circuit] has recognized as 'reasonably related' to the underlying discrimination charge." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (quoting *Shah*, 168 F.3d at 614) (additional internal quotation marks omitted and bracketed text added).

In the instant case, because Barrow's retaliation claim is reasonably related to her initial employment discrimination charge filed with the EEOC, Barrow was not required to file a second charge with the EEOC on that ground. As such, Ford's motion for summary judgment should be, on this basis, DENIED.

### B.    Statute of Limitations

In support of summary judgment, Ford argues that several of the alleged discrete acts underlying Barrow's claims are barred by the applicable limitations period. Defendant's Memorandum Supporting Summary Judgment at 9. Barrow has not

responded in opposition to this argument.

"A Title VII claim is time-barred if the plaintiff, after filing a charge with the appropriate state or local agency, does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'" *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 133 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e-5(e)(1)). Employment discrimination and retaliation claims brought pursuant to NYHRL are subject to a three-year limitations period.  N.Y. Civ. Prac. L. and R. § 214(2).  Further, even when repeated denials of promotions and training opportunities are alleged, such denials do not constitute a continuing violation so as to render the earlier denials timely; rather, the denial of both promotions and training opportunities are considered discrete actions for purposes of triggering the applicable limitations period.  *See Morgan v. National Railroad Passenger Corporation*, 536 U.S. 101, 114-15 (2002) (characterizing termination, failure to promote, denial of transfer and refusal to hire as "discrete acts" for purposes of Title VII's limitations period and holding that discrete acts occurring outside the timely filing period "are untimely filed and no longer actionable."); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005) (discrete acts occurring outside 300-day limitations period for Title VII claims are not actionable under Title VII); *Rechichi v. Eastman Kodak Company*, 2004 WL 1698333, *5 (W.D.N.Y. Jan. 21, 2004) (considering as discrete acts for purposes of NYHRL discriminatory pay, failure to promote, failure to train, and constructive discharge).  Nevertheless, discrete adverse employment acts occurring outside the timely filing period are properly considered as "background evidence to support the actionable claims."  *Jute*, 420 F.3d at 176.

In the instant case, because Barrow filed the EEOC charge on August 16, 2002,

only those acts occurring within 300 days of August 16, 2002, *i.e.*, on or after October 20, 2001, are actionable as a legal basis for relief under Title VII, and Barrow's Title VII claims based on failure to promote and denial of training opportunities occurring before October 20, 2001, are time-barred.  Furthermore, insofar as Barrow's claims also are brought pursuant to NYHRL, because the instant Complaint was filed on August 14, 2003, only the denial of promotions and training opportunities occurring within three years, *i.e.*, on or after August 14, 2000, are actionable.

As such, several of Barrow's allegations regarding Ford's denial of promotions and training opportunities are time-barred under both Title VII and NYHRL, including (1) Schmalkuche's placement in a Six Sigma position in September 1999; (2) Cline-Krueger's placement in a Synchronous Material Flow Coordinator position on December 1, 1999; (3) Haefner's selection as a Six Sigma Black Belt candidate in May 2000; and (4) Pappaj's placement in a Six Sigma position in May 2000.  Two additional allegations are barred only under Title VII, including (1) Gawronski's selection as a Six Sigma Black Belt candidate during the summer of 2001; and (2) Sirica's temporary assignment in the Plant Engineering Department during the summer of 2001. Significantly, Barrow does not dispute Ford's assertion that such incidents are time-barred and, thus, not actionable, and the court does not further consider them other than as background evidence in support of the actionable claims.  Accordingly, summary judgment should be GRANTED as to Barrow's Title VII and NYHRL claims based on race.

**C.      Elements of Employment Discrimination and Retaliation Claims**

As stated, Barrow claims Ford discriminated against her based on her race by denying Barrow promotions and training opportunities.  Barrow further claims that when she complained of such discrimination, Ford retaliated against her by continuing to deny Barrow promotions and training opportunities, and disciplining Barrow for conduct for which Barrow had not previously been subjected to discipline.

Ford argues in support of summary judgment that Barrow is unable to establish a *prima facie* case supporting a claim for either employment discrimination or retaliation. Defendant's Memorandum Supporting Summary Judgment at 13-18.  Ford further asserts it has articulated legitimate nondiscriminatory reasons for declining to place Barrow in the employment and training positions Barrow wanted.  *Id*. at 18-21.  Finally, Ford asserts that Barrow cannot show that such legitimate, nondiscriminatory reasons were a pretext for discrimination or retaliation.  *Id*. at 21-24.

Barrow, in opposing summary judgment, asserts that circumstantial evidence establishes a material issue of fact as to whether the discipline to which Barrow was subjected after filing the EEOC charge was intended as retaliation against Barrow for filing such charge.  Barrow's Memorandum at 3, 5.  Barrow also challenges that some of Ford's proffered legitimate business reasons for selecting candidates other than Barrow for certain positions are merely pretextual. *Id*. at 4-5.  Barrow further asserts that the disciplinary actions to which she was subjected following the filing of her EEOC charge rendered Barrow less likely to be promoted. *Id*. at 6-7.

In further support of summary judgment, Ford maintains that given that Barrow's response to summary judgment addresses only her retaliation claim, "Barrow's

response to Ford's summary judgment motion clarifies that Barrow has apparently

narrowed her claims to whether she was denied promotions due to unlawful retaliation,"

Defendant's Reply at 1, that Ford has articulated legitimate, non-discriminatory reasons

supporting each of the business decisions of which Barrow complains, *id.* at 4-6, and

that Barrow has failed to point to any evidence suggesting such reasons are mere

pretext for discrimination or retaliation, *id.* at 5-8.

Title VII makes it "an unlawful employment practice" for an employer to

discriminate against an employee because of the employee's "race, color, religion, sex,

or national origin." 42 U.S.C. § 2000e-2(a)(1)). Similarly, as relevant to this action, the

NYHRL makes it unlawful for an employer to discriminate against an employee based

on the individual's race. N.Y. Exec. Law § 296.1(a). The standard applied by the court

to evaluate race discrimination claims under the NYHRL is parallel to the analysis used

in evaluating Title VII claims. *Cruz v. Coach Stores*, 202 F.3d 560, 565 n. 1 (2d Cir.

2000).

Claims of employment discrimination are subject to a burden-shifting analysis set

forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *St. Mary's Honor

Center v. Hicks*, 509 U.S. 502, 506-507 (1993). The plaintiff bears the initial burden of

establishing a *prima facie* case of unlawful discrimination, *id.*, and the plaintiff's initial

burden is said to be "*de minimus*." *Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196,

202 (2d Cir. 1995). Upon such a showing, the burden of going forward shifts to the

employer, who must articulate some legitimate, non-discriminatory reason for the

employee's termination or adverse employment action. *Texas Dept. of Community

Affairs v. Burdine,* 450 U.S. 248, 254 (1981); *Hicks*, 509 U.S. at 507. The ultimate

burden of production then shifts back to the plaintiff to demonstrate "'that the proffered

reason was not the true reason for the employment decision.'" *Hicks*, 509 U.S. at 508

(quoting *Burdine*, 450 U.S. at 256).  "An employer's reason for the termination [or

adverse employment action] cannot be proven to be a pretext for discrimination unless

it is shown to be false and that discrimination was the real reason."  *Quaratino v. Tiffany*

*& Co.*, 71 F.3d 58, 64 (2d Cir.1995) (bracketed text added).  The burden of persuasion,

however, at all times remains with the plaintiff on the issue of the true motivation for the

discrimination.  *Hicks*, 509 U.S. at 507; *Burdine*, 450 U.S. at 253.  Thus, to defeat a

defendant's properly supported motion for summary judgment, the plaintiff must

produce sufficient evidence to support a rational finding that the legitimate, non-

discriminatory reasons proffered by the employer were false, and that more likely than

not the employee's race was the real reason for the discharge or adverse employment

action.  *Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 129 (2d Cir. 1996), *cert. denied*, 520

U.S. 1228 (1997).

Title VII also prohibits an employer from retaliation against an employee for

engaging in any activity protected under Title VII.  Specifically, Title VII forbids any

employer from

> discriminating against any of [its] employees . . . because he has opposed any
> practice made an unlawful employment practice by this subchapter, or because
> he has made a charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Retaliation claims under NYHRL "are generally governed by the same standards as

federal claims under Title VII."  *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597,

609-610 (2d Cir. 2006) (citing cases and granting summary judgment dismissing

plaintiff's retaliation claim under NYHRL for failure to establish a triable issue on federal

retaliation claim under Title VII).  Further, such retaliation claims are evaluated under

the same three-step burden-shifting analysis as are Title VII employment discrimination

claims.  *Jute*, 420 F.3d at 173 (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759,

768 (2d Cir. 1998)).  *See also Donato v. Plainview - Old Bethpage Central School

District*, 96 F.3d 623, 633 (2d Cir. 1996) (stating Title VII retaliation claims "are analyzed

under the three-step burden shifting approach originally explained in *McDonnell-

Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).").

The court thus considers whether the evidence in the record establishes the

elements for a claim for a race-based employment discrimination claim or a retaliation

claim.

### 1.    Employment Discrimination

#### a.    Prima Facie Case

Barrow asserts Ford discriminated against her on the basis of race when Ford

(1) failed to promote Barrow to other employment positions, and (2) denied Barrow

training opportunities.  To make out a *prima facie* case of employment discrimination

under Title VII, a plaintiff must show (1) membership in a protected class, (2)

satisfactory job performance, (3) termination of employment or other adverse

employment action, and (4) the ultimate filling of the position with an individual who is

not a member of the protected class.  *Farias v. Instructional Systems, Inc.*, 259 F.3d 91,

98 (2d Cir. 2001) (citing *Quaratino*, 71 F.3d at 64); *Meiri v. Dacon,* 759 F.2d 989, 995

(2d Cir.), *cert. denied,* 474 U.S. 829 (1985).  As in the instant case, a Title VII plaintiff alleging denial of a particular employment position must demonstrate (1) membership in a protected class; (2) possession of qualifications for the position; (3) denial of the position; and (4) that the denial occurred in circumstances giving rise to an inference of discrimination based on the plaintiff's membership in the protected class.  *Stern v. Trustees of Columbia University in the City of New York*, 131 F.3d 305, 311-12 (2d Cir. 1997).  *See also Williams v. R.H. Donnelly, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004) (observing that where an employee alleges failure to promote as the adverse employment action, the second prong is satisfied upon demonstrating the employee applied for and was qualified for the position to which the employee sought to be promoted); *Farias*, 259 F.3d at 98 ("Alternatively, the fourth prong of the *prima facie* case may be satisfied if the plaintiff can demonstrate that the discharge or adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class.") (citing *McLee v. Chrysler Corp.*, 109 F.3d 134, 135 (2d Cir. 1997); and *James v. New York Racing Ass'n*, 233 F.3d 149, 153-54 (2d Cir.2000) (noting *prima facie* case is made out by showing membership in a protected class, qualification for the position, an adverse employment action and "preference for a person not of the protected class" (internal quotation marks and citation omitted))).

A plaintiff's burden to establish a *prima facie* case of employment discrimination to defeat summary judgment is *de minimus.  McLee*, 109 F.3d at 134 (citing cases).  A case for employment discrimination may be established based on either direct or circumstantial evidence.  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001)

("direct evidence of discriminatory intent [with regard to employment] is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions"); *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997) ("Direct evidence is not necessary, and a plaintiff charging discrimination against an employer is usually constrained to rely on the cumulative weight of circumstantial evidence."). Further, as the court may not resolve issues of fact on a summary judgment motion, its determination is limited to "whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive."  *McLee*, 109 F.3d at 135.

Although a showing of disparate treatment among similarly situated employees is "a common and especially effective method of establishing the inference of discriminatory intent necessary to complete the *prima facie* case, [it] is only one way to discharge that burden."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001).  Rather, an inference of discriminatory intent may be drawn in several circumstances including, but not limited to:

> "the employer's continuing after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."

*Id.* (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)(citations omitted)).

In the instant case, it is undisputed that Barrow, as an African-American, meets the first criteria to establish a *prima facie* case of employment discrimination based on her membership in a protected class.  It is also settled that the denial of promotions and

training opportunities, as Barrow alleges, are adverse employment actions, as the third criteria requires.  *Demoret v. Zegarelli*, 451 F.3d 140, 152 (2d Cir. 2006) (lack of promotion meets third prong for prima facie case of employment discrimination under Title VII); *Jute*, 420 F.3d at 170, 176-77 (2d Cir. 2005) (listing as among adverse employment actions the denial of a promotion and arranging training opportunities so as to make it more difficult for the plaintiff to participate).  Nevertheless, although Barrow has specified several positions to which Ford failed to promote her, Barrow has not similarly identified any training opportunities denied.  Rather, the record establishes that Barrow actually participated in more training hours than the average Ford employee.  Leonard Affidavit ¶ 147, and Exh. HH (Training History Comparative Analysis for Barrow) (establishing Barrow completed 166 hours of training between March 2000 and July 2002, which is higher than the average 153.9 hours of training completed by GSR 6 supervisors).  Nor has Barrow identified any Ford employee who was selected for any training opportunity which was denied to Barrow, nor any training opportunity from which Barrow was excluded.  As such, Barrow cannot meet the second prong with regard to her discrimination claim based on failure to train, and the court will not further consider it.

As for the second prong, however, the parties dispute whether Barrow was qualified for the positions to which she sought promotion, and whether Barrow was, in fact, denied any job training opportunities.  Further, as to the fourth prong, the parties dispute whether any such adverse job actions were taken against Barrow under circumstances giving rise to an inference of racial discrimination.

The record establishes that Barrow, as a GSR 6 employee who did not possess

25

an academic degree in engineering was not, according to Ford, qualified for many of
the positions for which she sought promotion.  *See Williams*, 368 F.3d at 127 ("being
'qualified' refers to the criteria the employer has specified for the position.").  In
particular, Barrow was, according to Ford's policy, ineligible for many of the positions for
which she sought to be promoted because such positions were more than one salary
grade higher than Barrow's current GSR 6 Production Supervisor position.  These
positions include the (1) LL6 Ford Production System Coordinator position filled by
Cline-Krueger in December 1999; (2) LL6 Six Sigma - Black Belt Candidate position
filled by Haefner in May 2000; (3) GSR 8 Six Sigma position filed by Pappaj in May
2000; (4) GSR 8 Six Sigma - Black Belt Candidate position filled by Gawronski in the
summer of 2001; (5) LL6 Superintendent position filled by Casucci in April 2003; (6) LL6
Lead Quality Review Engineer position filled by Janeczko in May 2003; and (7) LL6
Synchronous Material Flow position in Dearborn, Michigan.[7]  Barrow, significantly,
disputes neither that it was Ford's policy not to promote an employee to a position for
which the salary grade was more than one grade above the employee's current
position, that Barrow's salary grade level of GSR 6 rendered her ineligible for direct
promotion to these positions, or that the selection of any of the comparative employees
for these positions resulted in elevating any such employee more than one salary grade
level from the previous position.  As such, Barrow has failed to establish she was
qualified for these positions.

---

[7] As discussed, Discussion, *supra*, at 16-18, several claims based on Ford's failure to promote
Barrow are barred by the applicable limitations period, including Title VII and NYHRL claims based on the
positions filled by Schmalkuche, Cline-Krueger, Haefner and Pappaj, as well as Title VII claims based on
positions filled by Gawronski and Sirica.

Further, both the GSR 6 Quality Department Supervisor position filled by Ricigliano in October 2002, and the LL6 Lead Quality Review Engineering position filled by Janeczko on May 19, 2003, required a Bachelor of Science Degree in Engineering. Barrow admits that despite her numerous academic degrees, she has not earned the requisite engineering degree.  Barrow Deposition Transcript ("Barrow Dep. T."), Holloway Affidavit Exh. C, at 80-81.  As such, Barrow was also ineligible to be promoted to these two positions, and the only two positions for which Barrow was arguably eligible include the GRS 6 Supervisor position supervising temporary plant engineering assignments and filled by Sirica during the summers of 2001 and 2003 ("the Temporary Supervisor position"), and the Human Resources Generalist position, for which no salary grade is provided, and which was posted in 2002, but never filled.

As for the Human Resources Generalist position, Ford's Human Resources Supervisor in the Production Department at the Plant John Leonard ("Leonard") explains that in September 2002, such "position was posted under the mistaken belief that the employee who held the position was transferring from the Plant to another Ford location.  However, the employee did not transfer to another Ford location, but instead remained at the Plant.  Accordingly, this position was never filled."  Affidavit of John Leonard ("Leonard Affidavit"), Defendant's Exh. 2, ¶¶ 1-2, 136.  Leonard further states that although Barrow asserts that three other Ford employees were placed in similar Human Resources jobs, one such position was filled by in March 2002, six months before Barrow applied for the Human Resources Generalist position in September 2002.  Leonard Affidavit ¶ 137.  The second employee identified by Barrow, Kelley Patton, has never held such a position.  *Id*. ¶ 138.  In 2004, the third employee,

Natasha Hill, who is African American, was placed in a Human Resources Associate
position, for which Barrow did not apply.  *Id*. ¶¶ 139-40.

Nevertheless, Sirica, who was selected for the GSR 6 Temporary Supervisor
position for the summers of 2001 and 2003 is white.  As such, Barrow has established a
*prima facie* case of employment discrimination as to this position, for which the burden
shifts to Ford to assert legitimate, nondiscriminatory reasons for selecting Sirica over
Barrow for the Temporary Supervisor position.[8]


### b.   Legitimate, nondisriminatory reasons for action

As Barrow has established a *prima facie* case of race-based employment
discrimination based only on the selection of Sirica for the Temporary Supervisor
position, the burden shifts to Ford to establish legitimate, non-discriminatory reasons for
the challenged actions.  Toward that end, Ford maintains that its selection of Sirica over
Barrow for the such position was a legitimate business decision.[9]  Defendant's
Memorandum Supporting Summary Judgment at 18-21.

---

[8] Because both the Temporary Supervisor position and Barrow's Production Supervisor position
were GSR 6 positions, Sirica's assignment to the Temporary Supervisor position did not result in any
increased pay to Sirica.  Leonard Affidavit ¶ 129.  It is, therefore, curious that Ford does not argue that
placing Barrow in the Temporary Supervisor position would not have been a promotion for Barrow.
Notably, to constitute adverse employment action, there must be some negative impact on plaintiff's
employment.  *See Ginsberg v. Valhalla Anesthesia Assocs., P.C.*, 971 F.Supp. 144, 148 (S.D.N.Y. 1997).
Specifically, it must be shown that plaintiff suffered "a materially adverse change in the term and
conditions of employment."  *McKenney v. New York City Off-Track Betting Corp.*, 903 F.Supp. 619, 623;
*see also Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997).  It is sufficient if the adverse treatment
suffered by the plaintiff "affected the terms, privileges, duration, or conditions" of employment."  *Dortz v.
City of New York*, 904 F.Supp. 127, 156 (S.D.N.Y. 1995).

[9] Ford also proffers legitimate, nondiscriminatory reasons for selecting other employees for the
jobs for which Barrow had applied, but given that Barrow is unable to establish a *prima facie* case of
employment discrimination as to those positions, the court does not consider whether such proffered
reasons are legitimate and nondiscriminatory.

In assessing whether Ford has articulated a legitimate reason for selecting

Sirica, rather than Barrow, for the Temporary Supervisor position, the court need not

inquire as to whether Sirica, rather than Barrow, was more qualified for the position;

rather, so long as the proffered reasons are legitimate and nondiscriminatory, an

employer is free to choose among qualified candidates without risking liability under

Title VII.  *Burdine*, 450 U.S. at 259; *Meiri*, 759 F.2d at 995 (holding courts "must refrain

from intruding into an employer's policy apparatus or second-guessing a business's

decision-making process").  The law is well-established that federal courts hearing

discrimination claims do not "sit as a super-personnel department" to reexamine a firm's

business decision about how to evaluate the relative merits of education and

experience in filling job positions.  *Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997).

Furthermore, an employee's disciplinary record can establish either that the employee's

job performance was unsatisfactory or that the employer's motive for an adverse

employment action was not discriminatory.  *McLee*, 109 F.3d at 135-37 (upholding

district court's determination that a discharged employee was unable to establish a

*prima facie* case for racially discriminatory discharge where the record indisputably

showed the employee's job performance was unsatisfactory in 12 out of 23 areas and

that he had been disciplined for repeated tardiness).

Here, Ford asserts that the record establishes, and Barrow does not dispute, that

Sirica, objectively possessed the necessary qualifications for the Temporary Supervisor

position.  Defendant's Memorandum Supporting Summary Judgment at 18-21; Leonard

Affidavit ¶¶ 125-35.  In particular, Gerard Stroud ("Stroud"), who supervised both Sirica

and Barrow in the Plant's Production Department, and who is African-American,

encouraged Sirica to take the temporary assignments, but never recommended Barrow for any new position or promotion at Ford.  Deposition Transcript of Sirica ("Sirica Dep. T."), Holloway Affidavit Exh. O, at 22; Deposition Transcript of Stroud ("Stroud Dep. T."), Holloway Affidavit Exh. P, at 49, 59, 92.  Sirica, throughout his employment with Ford, consistently received performance review ratings of Excellent or better, Leonard Affidavit ¶ 132, thereby satisfying Ford's policy requirement of promoting only employees with performance review ratings of at least Satisfactory Plus.  Leonard Affidavit ¶ 9; Stroud Dep. T. at 59, 80-81, 99-100; Deposition Transcript of Samuel Carocci ("Carocci") ("Carocci Dep. T."), Holloway Affidavit Exh. K at 53-55.  In contrast, Barrow's performance was consistently rated only as satisfactory.  Leonard Affidavit ¶ 10; Stroud Dep. T. at 59, 80-81, 99-100; Carocci Dep. T. at 53-55.

Nor had Sirica, unlike Barrow, ever been subjected to any disciplinary action at Ford.  Leonard Affidavit ¶ 133.  Siricia, who held a Bachelor of Science Degree in Industrial Technology, possessed the requisite experience in working mechanical breakdowns of all door and pan assembly lines.  Sirica Dep. T. at 7, 41-43; Leonard Affidavit ¶ 127.  While temporarily assigned to the Plant Engineering Department during the summer of 2001, Sirica "was responsible for mechanical breakdowns of all door and pan assembly lines."  Leonard Affidavit ¶ 126.  Significantly, Sirica worked with skilled trade employees to learn mechanical functions of production lines resulting in some of the highest number of parts produced at the Plant.  Sirica Dep. T. at 42-43; Leonard Affidavit ¶ 126-27.  Sirica also, while working on the pan line, a 50-year old piece of machinery, learned how to troubleshoot mechanical problems and became one of only a few salary employees at Ford able to do so.  Leonard Affidavit ¶ 128.

The record thus establishes that Sirica's qualifications for the Temporary Supervisor position are well documented such that Ford has articulated a legitimate, nondiscriminatory reason for selecting Sirica, rather than Barrow, for such position. *See Slattery v. Swiss Reinsurance America Corp.*, 248 f.3d 87, 93 (2d Cir. 2001) (considering as legitimate, nondiscriminatory reasons supporting employer's decision to terminate employee fact that former employee failed to bring in new business). As such, the burden shifts to Barrow to establish that such reasons were merely a pretext to Ford's true, discriminatory motive.

### c.     Pretext

Once an employer articulates a non-discriminatory reason for the challenged adverse employment action, "the presumption of discrimination 'drops out of the picture,' . . . . [and] the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. New York Racing Association*, 233 F.3d 149, 154 (2d Cir. 2000) (quoting *St. Mary's*, 509 U.S. at 510-11, and citing *Burdine*, 450 U.S. at 255-56). "A motion for summary judgment may be defeated where 'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'" *Byrnie v. Town of Cromwell, Bd. of Education*, 243 F.3d 93, (2d Cir. 2001) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)). Nevertheless, the failure to produce "any evidence, other than conclusory statements unsupported by the record, to rebut the legitimate, nondiscriminatory reasons offered by

[the employer for the adverse employment action], let alone evidence that could reasonably support a verdict in [plaintiff's] favor," warrants dismissal on summary judgment.  *Farias*, 259 F.3d at 99.

As such, in the instant case, to establish that the reasons articulated by Ford in support of its decision to select Sirica, rather than Barrow, for the Temporary Supervisor position, Barrow must present evidence on which a trier of fact could find that Ford intentionally discriminated against her.  *Reeves*, 530 U.S. 133, 143 (2000).  Barrow, however, fails to do so, and the record is devoid of any evidence suggesting even a remote possibility that the legitimate and nondiscriminatory reasons articulated by Ford in support of Ford's decision not to select Barrow for any of the positions she desired are merely pretext for racial discrimination.

Accordingly, summary judgment should be GRANTED in favor of Ford on the employment discrimination claims.  The court next considers whether Ford is entitled to summary judgment on Barrow's retaliation claims.

### 2.	Retaliation

#### a.	*Prima Facie* Case

Barrow alleges Ford retaliated her for making a complaint to Ford's harassment hotline and for filing the EEOC charge by (1) failing to promote Barrow; (2) denying Barrow training opportunities; (3) switching Barrow's shift assignment from the day shift to the afternoon shift; (4) disciplining Barrow for filing false timecards; and (5) requiring Barrow to follow Ford's attendance policies, specifically, to directly speak with a supervisor in reporting an absence and providing medical documentation to

32

substantiate absences based on illness.  To establish a *prima facie* case of retaliation in the context of an adverse employment action, a plaintiff must demonstrate "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"  *Jute*, 420 F.3d at 173 (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001)).  As with a Title VII employment discrimination claim, a Title VII plaintiff's burden of proof to survive a summary judgment motion at the *prima facie* stage is *de minimis*.  *Id*. (citing *Woodman v. WWOR-TV*, 411 F.3d 69, 76 (2d Cir. 2005)).  "In determining whether this initial burden is satisfied in a Title VII retaliation claim, the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.  *Id*. (citing *Donohue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987)).

In the instant case, Barrow has met three of the four elements necessary to establish a *prima facie* case of Title VII retaliation based on the promotions she sought but was denied.  In particular, Barrow has established that she participated in a protected activity when she filed the formal EEOC charge on August 16, 2002.  *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (filing of an EEOC complaint constitutes protected activity under Title VII).  Barrow's call to Ford's harassment hotline in March 2002 also constitutes activity protected under Title VII because "opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, [and] this notion of 'opposition' includes activities such as 'making complaints to management . . . .'"  *Cruz v. Coach*

*Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).  Nor does the fact that Right to Sue letter the EEOC issued Barrow indicates the EEOC terminated its processing of Barrow's EEOC charge have any effect on the validity of Plaintiff's present retaliation claim because a Title VII plaintiff need not establish that the conduct she opposed was actually a violation of the statute so long as she can establish that she possessed a "'good faith, reasonable belief that the underlying challenged actions of the employer violated that law.'"  *Quinn*, 159 F.3d at 769 (quoting *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  The first element of Plaintiff's retaliation claims is therefore established.

As to the second element, there is no dispute that Ford was aware that Barrow named in the EEOC charge Ford as the employer who allegedly discriminated against her.  The second element of Plaintiff's *prima facie* case of retaliation in violation of Title VII is thus established.

As for the third element, it is well-settled that the denial of a promotion or training opportunity qualifies as an adverse employment action.  *Jute*, 420 F.3d at 170, 176-77 (listing as among adverse employment actions the denial of a promotion and arranging training opportunities so as to make it more difficult for the plaintiff to participate).  Nevertheless, the asserted bases of Barrow's other retaliation claims are insufficient to establish the third element.  In particular, as to Barrow's claimed denial of training opportunities, as discussed, Discussion, *supra*, at 25, Barrow has failed to identify any such training opportunity that Ford allegedly denied her.

Insofar as Barrow challenges the disciplinary actions to which she was subjected

for filing false timecards and for failing to comply with Ford's company policy regarding

attendance and reporting absences, it is basic that such disciplinary actions are do not

constitute adverse employment actions absent some indication that the policies were

enforced only against employees who had participated in Title VII protected activities

and had some negative impact on the terms and conditions of the employee's

employment.  *See Sanders v. New York City Human Resources Admin.*, 361 F.3d 749,

756 (2d Cir. 2004) (holding employer's issuance of negative employee performance

evaluation and critical addendum did not constituted adverse employment action

because such evaluation had no effect on terms or conditions of employment); *Weeks*

*v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001) (employee's receipt

of "notice of discipline" and counseling memorandum advising that employee had failed

to comply with employer's policy did not constitute adverse employment action under

Title VII where employee failed to describe any adverse effects or ramifications on

terms and conditions of employment).  Here, Barrow has failed to point to any evidence

that other Ford employees who had similarly filed false timecards or failed to comply

with Ford company policies were not similarly disciplined, nor has Barrow described any

negative impact on the terms and conditions of her employment resulting from such

discipline.  As such, no retaliation claim asserted by Barrow can be predicated on such

actions.

Furthermore, insofar as Barrow maintains Ford changed her work shift

assignment from the more desirable day shift to the afternoon workshift, such a change

in shifts does not constitute an adverse employment action insofar as the Second

Circuit has defined an adverse employment action as "a materially adverse change in

the terms and conditions of employment." *See Sanders*, 361 F.3d at 755.

Furthermore, "[t]o be materially adverse, a change in working conditions must be 'more

disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id*.

(quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).  A shift change alone has

been held insufficient to establish an "adverse employment action."  *See Hunt v.*

*Rapides Healthcare Sys.*, 277 F.3d 757, 769 (5th Cir. 2001) (reassignment from day

shift to night shift is not a change in duties, compensation or benefits constituting an

adverse employment action for purposes of Title VII retaliation); *Grube v. Lau*

*Industries, Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (employer's decision to move

employee from first shift to second shift does not, without more, arise to level of

adverse employment action for *prima facie* case of employment discrimination).  As

such, Barrow's assignment to a less desirable work shift does not provide any basis for

her Title VII retaliation claim.

    With regard to the fourth element, Barrow, cannot establish the requisite causal

connection between the filing of the EEOC charge and the adverse employment action

as to many of her claims.  In particular, a plaintiff may establish a causal connection

between the protected activity and the adverse employment action either through direct

evidence of a retaliatory animus or through indirect or circumstantial evidence, *e.g.*,

evidence of a close proximity in time of the two events.  *Gordon v. New York City Board*

*of Education*, 232 F.3d 111, 117 (2d Cir. 2000).  Proof of a causal connection can be

established indirectly by showing that the protected activity was followed closely by

discriminatory treatment, or through other evidence such as disparate treatment of

fellow employees who engaged in similar conduct, or directly through evidence of

palpable retaliatory animus directed against a plaintiff by the defendant.  *DeCintio v.*
*Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir. 1987), *cert. denied,*
484 U.S. 965 (1987). *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d
Cir. 1996) (plaintiff can indirectly establish a causal connection to support a
discrimination or retaliation claim by "showing that the protected activity was closely
followed in time by the adverse [employment] action") (internal citation and quotation
omitted).  At the summary judgment stage, the determination of whether the
circumstances give rise to an inference of retaliation must be based on whether the
proffered evidence, direct or indirect, shows circumstances that would be sufficient to
permit a rational finder of fact to infer a retaliatory motive.  *LaFond v. General Physics*
*Services Corp.,* 50 F.3d 165, 173 (2d Cir. 1995).

     Here, Barrow has not submitted any evidence establishing, either directly, or
indirectly, any retaliatory animus.  Nor does Barrow identified any similarly situated Ford
employees who were subjected to disparate treatment.  Moreover, Barrow is unable to
establish a close temporal proximity between the filing of the EEOC charge and any
adverse employment action.  Rather, although Barrow made her complaint to Ford's
harassment hotline in March 2002, and filed the EEOC charge in August 2002, many of
Ford's alleged retaliatory actions occurred well prior to such activities.  In particular, five
of the job promotion denials, including those involving Schmalkuche, Cline-Krueger,
Haefner, Pappaj, and Gawronski, occurred prior to 2002.  Discussion, *supra*, at 18.
Similarly, Sirica was first assigned to the Temporary Supervisor position in 2001 and,
thus, that assignment occurred prior to 2002.  As such, only the promotions of
Ricigliano, Casucci, Janeczko and Sirica occurred after Barrow's participation in the

protected activity.  As such, only the promotions of Ricigliano in October 2002, Casucci

in April 2003, and Janeczko in May 2003, and Sirica's 2003 assignment to the GSR 6

Temporary Supervisor position provide any possible basis for Barrow's retaliation claim

based on failure to promote.

### b.    Legitimate, nondiscriminatory reasons for action and Pretext

Following the establishment of a *prima facie* case, the burden shifts to the

defendant to establish a legitimate, nonretaliatory reason for the challenged action.

*Quinn*, 159 F.3d at 768.  Upon defendant's meeting this burden, the plaintiff is required

to "adduce evidence 'sufficient to raise a fact issue as to whether [the employer]'s

reason was merely a pretext' for retaliation." *Id*. at 769 (quoting *Tomka v. Seiler Corp.*,

66 F.3d 1295, 1309 (2d Cir. 1995)) (bracketed text in original).

Here, the only incidents which conceivably could form the basis of a retaliation

claim are the promotions of Ricigliano in October 2002, Casucci in April 2003, and

Janeczko in May 2003, and Sirica's 2003 assignment to the GSR 6 Temporary

Supervisor position provide any possible basis for Barrow's retaliation claim based on

failure to promote.

However, as discussed, Discussion, *supra*, at 27, Barrow was not, objectively,

eligible for the position filled by Ricigliano, because Barrow did not possess the

requisite Bachelor of Science in Engineering degree, nor for the salary grade LL 6

positions filled by Casucci and Janeczko, because such positions were more than one

salary grade higher than Barrow's current GSR 6 Production Supervisor position.[10]

With regard to the 2003 assignment of Sirica to the Temporary Supervisor position, as

discussed above, Discussion, *supra*, at 29-31, Ford has proffered legitimate,

nondsciminatory reasons for selecting Sirica, rather than Barrow for such assignment,

and Barrow has failed to point to any evidence suggesting that such reasons are mere

pretext for retaliation.

Under these circumstances, the court finds the record devoid of any evidence

that Ford took any adverse job action against Barrow to retaliate for complaining to

Ford's harassment hotline or for filing the EEOC charge.  Defendant's motion for

summary judgment, therefore, should be GRANTED as to Barrow's retaliation claim.


## 2.    Motion to Dismiss as Rule 37(b)(2)(C) Sanction

Assuming, *arguendo*, the District Judge agrees with the recommendation that

summary judgment be granted in Ford's favor, Ford's motion to dismiss the Complaint

to sanction Barrow for failing to comply with the March 14, 2005 Order should be

DISMISSED as moot.  Alternatively, should the District Judge disagree with the

recommendation that summary judgment be granted in Ford's favor, the court

addresses Ford's motion to dismiss as follows.

Ford moves pursuant to Fed. R. Civ. P. 37(b)(2)(C) to dismiss the Complaint as

---

[10] Similarly, although no date is provided for the LL 6 Synchronous Material Flow positions located in Dearborn, Michigan, such positions also are more than one salary grade higher than Barrow's current position.  Nor does Barrow dispute that the Human Resources Generalist position, which was posted in 2002, was never filled.

a sanction based on Barrow's failure to timely comply with court-ordered discovery as directed in the March 14, 2005 Order.  Defendant's Memorandum Supporting Dismissal at 1.  Specifically, although Barrow was ordered to provide Ford with the audiotapes by March 24, 2005, Barrow, as of March 25, 2005, had yet to comply.  *Id*. at 2.

Barrow, in opposition to the motion to dismiss, relies on the statements of her attorney, Rodriguez, who explains that on March 24, 2005, Rodriguez contacted Doculegal to begin the process of delivering the audiotapes for copying and delivery to Ford.  Rodriguez Affirmation ¶ 3.  According to Rodriguez, on March 25, 2005, he "made the necessary arrangements to have the subject tapes delivered to Doculegal." *Id*. ¶ 4.  Doculegal copied the audiotapes and delivered the copies to Ford's "counsel at their Buffalo office." *Id*. ¶ 5.  Rodriguez further urges the court to deny the motion to dismiss because Ford "has not been prejudiced or impeded in obtaining the copied tapes," *id.* ¶ 7, and Barrow "has been available to defendant for further oral examination relating to the subject tapes." *Id*. ¶ 8.  In further support of the motion to dismiss, Ford emphasizes that Rodriguez, in his affirmation in opposition to dismissal, admits that the audiotapes were not timely produced in accordance with the March 14, 2005 Order, and offers no explanation for such failure to comply, "but merely suggests that Ford should incur the expense of re-deposing Plaintiff on matters contained in the audiotapes." Defendant's Reply Supporting Dismissal at 1-2.

All litigants are obligated to comply with court orders.  *Baba v. Japan Travel Bureau International, Inc.*, 111 F.3d 2, 5 (2d Cir. 1997).  "An order issued by a court must be obeyed even if it is later shown to be erroneous." *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1984).  When litigants "flout" that

obligation, they must suffer the consequences of their actions.  *McDonald*, 850 F.2d at

124 (2d Cir. 1984).  Further, imposition of sanctions under Rule 37 for failure to comply

with court-ordered discovery is within the district court's discretion.  *Valentine v.*

*Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994).

> Pursuant to Fed.R.Civ.P. 37,
>
> [i]f a party . . . fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

Fed.R.Civ.P. 37(b)(2)(A)-(C).

There is thus a "spectrum of sanctions" available from which the court may choose to

penalize a party whose conduct warrants it,  *National Hockey League v. Metropolitan*

*Hockey Club*, 427 U.S. 639. 643 (1976), and the proper sanction to be imposed hinges

on that which is determined necessary to prevent prejudice to the requesting party.

*Wilson v. Volkswagen of America, Inc.*,  561 F.2d 494, 504-505 (4th Cir. 1977).

Although a complaint and, thus, the action, may be dismissed as a sanction for

failing to comply with discovery, "dismissal with prejudice is a harsh remedy to be used

only in extreme situations . . ., and then only when a court finds willfulness, bad faith or

any fault" on the part of the noncompliant party.  *Bobal v. Rensselaer Polytechnic*

*Institute*, 916 F.2d 759, 764 (2d Cir. 1990).

Here, the record demonstrates that the March 14, 2005 Order advised Barrow that failure to comply with such Order may subject Barrow to the Complaint's dismissal pursuant to Rule 37(b)(2)(C).  March 14, 2005 Order.  Significantly, although neither Barrow nor Rodriguez appeared on March 14, 2005 for oral argument on Ford's motion to compel, Barrow does not deny timely receipt of the March 14, 2005 Order, such that she was unable to timely comply by producing the audiotapes to Ford by March 24, 2005.  Nor does Barrow assert that the failure to timely produce the audiotapes was the result of some oversight or excusable neglect.  Barrow also failed to seek any extension of time to produce the audiotapes.  Indeed, the timing of the events strongly suggests that Barrow had no intention of providing Ford with the audiotapes until Barrow was served with the motion to dismiss.  Importantly, because Ford was without the benefit of the audiotapes prior to deposing Barrow, Ford was not able to question Barrow as to the information contained on the audiotapes, and may now only do so at additional expense.

Nevertheless, Barrow's failure to timely deliver the audiotapes, which Ford does not deny having since received, did not prevent Ford from filing for summary judgment in accordance with the scheduling order.  As such, a reasonable alternative to dismissing the Complaint is presented, specifically, the less drastic sanction of ordering Barrow and her attorney to reimburse Ford for the cost of re-deposing Barrow and any other witnesses based on information revealed in the audiotapes should Ford be required to proceed to trial.  Fed. R. Civ. P. 37(a)(4)(A) (permitting expenses and sanctions to be assessed against either noncomplying party or counsel).  Further, absent any explanation by Barrow for her failure to timely provide Ford with the

audiotapes, such as Rodriguez encountered difficulty obtaining the audiotapes from Barrow, the court assesses any such additional expenses incurred by Defendant as a result of the delay against only Rodriguez.

As such, should summary judgment be granted in favor of Ford, then the motion to dismiss as a sanction pursuant to Rule 37(b)(2)(C) should be DISMISSED as moot. Alternatively, the motion to dismiss as a sanction should be DENIED insofar as dismissal of the Complaint is requested, but should be GRANTED as to the lesser sanction of directing Barrow's counsel to reimburse Ford for the cost of any further depositions of Barrow and other witnesses should Ford be required to proceed to trial. In the event that Barrow's further deposition is required, Ford shall submit to the court its affidavit of such costs **within 10 days** thereafter.

## CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment (Doc. No. 35) should be GRANTED and Defendant's motion to dismiss as a sanction for failure to comply with discovery (Doc. No. 30) should be DISMISSED as moot, and the Clerk of the Court should be directed to close the file.  Alternatively, should the District Judge deny Defendant's motion for summary judgment, Defendant's motion for sanctions should be DENIED insofar as Defendant seeks dismissal for failure to comply with discovery and is GRANTED as to the lesser sanction of imposing any costs associated with further depositions on Defendant's counsel.

Respectfully submitted, as to the recommendations that summary judgment be GRANTED in favor of Defendant, and that Defendant's motion to dismiss as a sanction pursuant to Rule 37(b)(2)(C), be dismissed as moot, and, alternatively, that Defendant's motion to dismiss as a sanction be DENIED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

SO ORDERED, as to the alternative decision granting Defendant's motion for lesser sanctions pursuant to Rule 37(b)(2)(C).

DATED:      May 11, 2007
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        May 11, 2007
                  Buffalo, New York